# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

RONALD LAWTON,        )
                           )
      Petitioner,      )
                           )
v.                    )     Case No. CV410-040
                           )
VANESSA O'DONNELL, *Warden*,  )
                           )
      Respondent.    )

## REPORT AND RECOMMENDATION

Ronald Lawton, who is currently incarcerated at Burruss Correctional Training Center in Forsyth, Georgia, has petitioned the Court over the respondent's opposition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) For the following reasons, the petition should be **DENIED**.

## I. BACKGROUND

On June 29, 2007, Lawton pled guilty to possession of cocaine and marijuana. (*Id.* at 1.) He was sentenced to 30 years' imprisonment as a recidivist, but was given 10 years to serve. (*Id.*) He did not appeal the

conviction, instead opting to proceed directly to state habeas corpus proceedings. (*Id.* at 2.) That court denied relief (*id.*), and the Georgia Supreme Court denied further review. (*Id.* at 3.) Lawton then filed this federal habeas petition, asserting four grounds for relief:

(1) Defense counsel, Stan Fitzgerald, coerced him into entering an open-ended guilty plea to the charges, and the plea was not knowingly or voluntarily entered;

(2) Counsel rendered ineffective assistance during the plea hearing;

(3) The trial judge and defense counsel failed to inform him that he had the right to withdraw the guilty plea prior to sentencing; and

(4) The sentence is cruel and unusual and is grossly disproportionate to the severity of the crime.

(*Id.* at 5-6.)

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials'

and to ensure that state-court convictions are given effect to the extent possible under law."); *see Peterka v. McNeil*, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state courts") (citation omitted); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.") (citations omitted). These restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The "threshold question" under § 2254(d)(1) is whether the habeas petitioner is seeking to apply a rule of law that was clearly established at

the time his state court conviction became final. *Williams*, 529 U.S. at 390. Since the statute expressly provides that only pronouncements "by the Supreme Court of the United States" qualify as "clearly established Federal law," 28 U.S.C. § 2254(d)(1), a federal habeas court may not look to the "the case law of the lower federal courts" in determining what federal law is "clearly established." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). Further, the statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. These "holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

So unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten*, 552 U.S. 120, 125 (2008), or establishes a legal principle that "clearly extend[s]" to the conduct at issue in that case, then it cannot be said that the law is clearly established under AEDPA. *Id*. at 123; *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). Thus, "federal courts may no longer extract clearly established law from the general legal principles developed in factually

distinct contexts." *House*, 527 F.3d at 1017. If the federal habeas court makes a threshold determination that the law was not clearly established at the time the state court issued its decision, then that finding is dispositive in the § 2254(d)(1) analysis, and there is no need for the Court to assess whether the state court's decision conflicts with controlling United States Supreme Court authority. *Id.*

But where the Supreme Court has decided the issue addressed by the state court, the federal habeas court must determine whether the state court's decision is "contrary to" or involves an "unreasonable application" of the controlling precedent. These § 2254(d)(1) clauses have independent meaning and furnish separate bases for reviewing a state court's decisions. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 404-05; *Putnam*, 268 F.3d at 1241 (11th Cir. 2001). A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13. In contrast, a state court decision involves an "unreasonable application" of clearly established federal law where it correctly identifies

the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. *Id.* at 407-08, 413. Thus, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* at 409; *Bell*, 535 U.S. at 694; *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). That presents "a substantially higher threshold" than the pre-AEDPA standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see McDaniel v. Brown*, ___ U.S. ___, 130 S. Ct. 665 at * 671-674 (2010).

Federal courts also must presume state court factual findings to be correct unless they are rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. *Mason v. Allen*, ___ F.3d ___, 2010 WL 1856165 at * 1 (11th Cir. May 11, 2010); *Dill v. Allen*, 488 F.3d 1344,

1354 (11th Cir. 2007). Such deference does not apply, however, to mixed determinations of law and fact. *Parker*, 244 F.3d at 836.

Finally, a state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in nature and offers no discussion of the court's reasoning. *Wright v. Moore*, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a rejection of his claim on the merits so as to warrant deference); *Parker*, 331 F.3d at 776 ("the summary nature of [the] decision does not lessen the deference that it is due"); *see Smith v. Spisak*, ___ U.S. ___, 130 S. Ct. 676, 688 (2010).

## III. ANALYSIS

### A. Ground 1

In Ground 1, Lawton alleges that he was coerced into entering an open-ended guilty plea, so the plea was not knowingly and voluntarily entered. (Doc. 1 at 5.) He explains that during plea negotiations, the prosecutor offered a 30-year sentence with 3 to serve, a more beneficial sentence than he actually received at sentencing. (*Id.* at 6.) Lawton states that his attorney, Stan Fitzgerald, suggested that he take an open-ended plea instead, which Fitzgerald told him would allow the judge to

sentence him to a 9-month drug-treatment program based upon his rather substantial assistance to the Bureau of Alcohol, Tobacco, Firearms, and Explosives in numerous drug and firearm arrests. (*Id.*) Moreover, Fitzgerald told him that he would not receive more than three years to serve. (*Id.*) Fitzgerald, however, did not inform Lawton that he could face a longer sentence if he opted to take an open-ended plea. (Doc. 11 at 2.) Absent counsel's coercion, says Lawton, he would have insisted on accepting the plea offer. (*Id.*)

The state habeas court rejected Lawton's argument. It pointed to Lawton's under-oath testimony before the trial judge. (Doc. 10-4 at 2.) There the following discussion took place:

BY THE COURT:

Q It would be a minimum of five years, maximum of thirty years. The possession of marjiuana less than an ounce would be a misdemeanor which would be up to twelve months in prison, and the contempt of court I imagine would be twenty days and a $500 fine. You understand that those are the minimums and maximums that you may be facing?

A Yes.

Q And that this is an open-ended plea. There's no agreement between your attorney and the district attorney, and I could sentence you to the minimum, I could suspend the sentence, or I could stack everything, give you everything. You understand that?

A  Yes, sir.

Q  There's a wide range that I could do.

A  Yes, sir.

Q  You understand that you have the right to plead not guilty and have a jury trial on this?

A  Yes, sir.

Q  And that by pleading guilty you're waiving the following rights. The right to hear evidence against you, the right to confront your accusers, the right to be represented by a lawyer at trial, the right to testify and offer evidence on your own behalf, the right to subpoena your own witnesses, the privilege against self-incrimination which you're waiving today answering my questions, and the presumption of innocence which would remain with you throughout trial. Do you understand those rights?

A  Yes, sir.

Q  Has anyone, either your attorney, the district attorney, police officer, or anyone else made any threats or promises of any kind to influence you to plead guilty today?

A  No, sir, Your Honor.

Q  Is your plea of guilty a voluntary plea?

A  Yes, sir.

Q  Have you had enough time to talk to [your attorney,] Mr. Fitzgerald[,] about this plea?

A  Yes, sir.

Q  Are you satisfied with Mr. Fitzgerald's services?

A  Yes, sir.

Q  Have the answers to my questions been truthful?

A  Yes, sir.

Q  All right.  And it's your desire to enter a guilty plea today and have me determine your sentence?

A  Yes, sir.

THE COURT:  All right.  He can enter the plea.

(Doc. 10-2 at 3-5.)  Citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), the state habeas court reasoned that Lawton's contemporaneous statements at the plea hearing -- solemn declarations made under oath -- should carry a "strong presumption of verity."  And based upon those statements and the colloquy as a whole, the state habeas court determined the trial court clearly informed Lawton of the rights he was waiving, as required by *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (to show that a plea was knowingly and voluntarily entered, the record must demonstrate that the defendant's plea was informed, voluntary, and made with an understanding of the rights waived by the plea, specifically the privilege against self-incrimination, the right to trial by jury, and the

right to confront one's accusers).[1]  *See also United States v. Ruiz*, 536 U.S. 622, 629 (2002).  Further, there was "no credible evidence that Petitioner was coerced in any way by his attorney."  (Doc. 10-4 at 4.)  This Court finds no flaw in the state habeas court's reasoning or factual findings -- it reasonably applied Supreme Court precedent in addressing Lawton's claim.  Hence, this Court should defer to the state's court's determination and deny Ground 1.

### B.    Ground 2

Lawton next alleges that his defense attorney rendered ineffective assistance during the plea hearing proceedings.  (Doc. 1 at 6.) Specifically, counsel was ineffective for advising him that he would receive a 9-month sentence by entering an open-ended plea and by advising him that he would be sentenced to no more than 3 years to serve as had already been offered in the government's "final" plea offer.  (*Id.*; doc. 11 at 2.)

After considering Mr. Fitzgerald's habeas hearing testimony, the state habeas court entirely disagreed with Lawton's assessment.

---

[1] While the state habeas court did not directly address counsel's alleged misadvice regarding the maximum possible sentence Lawton faced in its ground 1 discussion, the record shows that the trial judge advised him that he could be sentenced anywhere within the statutory range.

Fitzgerald recalled that "the state agreed to recommend a sentence of thirty years, serve three, as a recidivist." (Doc. 10-4 at 4-5.) Lawton "rejected this offer because of the recidivist nature of the sentence and because [he] felt that it was too harsh, based upon the small amount of drugs he possessed when he was arrested."[2] (*Id.* at 5.) After rejecting

---

[2] This is from the habeas hearing transcript:

Q. Well, sir, do you recall instructing me to go through with the open-end plea in order to allow the judge to send me to the 9-month program?

A. I do not and I did not.

Q. Well, I -- okay. Do you recall telling me that the most I could receive to the open-ended plea was a 30 year serve three already offered by the State?

A. Absolutely not.

Q. Because I would have knew there was a sentence on the table -- if I would have knew that the deal was off the table I would have took it.

A. Mr. Lawton, I informed you fully of the possibilities that you could be facing by going with an open-ended plea. The judge informed you of that fully before the hearing started. Mr. Lawton, when this case first started, the district attorney came to you with a 30 do five-year sentence plea offer. And at that point, we got a letter from the ATF stating that you had cooperated with them and helped them on some of their investigations.

Q. Yes.

A. And due to that letter, the district attorney reduced your sentence from five years to serve to three years to serve and that was the best he was going to do. And I went and met with him several times after that to try to get him to waive the recidivism count. He wasn't willing to do that. I informed you on numerous occasions the best deal you were going to get on a negotiated plea was a 30 do three and that if you didn't want to accept, your other option was either to go to trial or do an open-ended plea. And I informed you of the risk of doing either of those.

the offer, counsel did his best to mitigate the damage by subpoenaing an ATF agent and Lawton's manager to testify on his behalf at the change of plea/sentencing hearing. (*Id.*) And at the change of plea hearing, the judge explicitly advised Lawton that he faced a five to thirty year sentence just for the cocaine possession. (*Id.*) The state habeas court found that petitioner's "argument that he was misled about the likely sentence he would receive for the crimes to which he pled guilty is contradicted by the record", and thus he "made no showing that his attorney's performance was deficient." (*Id.* at 7.) It credited "Mr. Fitzgerald's testimony that he informed Petitioner of what the state's offer was and that he informed Petitioner of what the maximum sentence could be." (*Id.*) "Mr. Fitzgerald also presented extensive mitigation evidence by subpoenaing two witnesses on behalf of petitioner." (*Id.*)

Citing *Strickland v. Washington*, 466 U.S. 668 (1984), *Tollett v. Henderson*, 411 U.S. 258 (1973), *McMann v. Richardson*, 397 U.S. 759 (1970), and *Hill v. Lockhart*, 474 U.S. 52 (1985), the state habeas court explained that Lawton must satisfy a two-pronged test, first showing

---

(Doc. 10-2 at 10-11.)

that counsel's plea advice was outside the range of competence demanded of attorneys in criminal cases and next showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. (Doc. 10-4 at 6.) Here, the state habeas court credited Fitzgerald's testimony that he informed Lawton of the state's offer and the maximum possible sentence. (*Id.*) Accordingly, Lawton failed to show deficient performance or prejudice as to this claim. (*Id.*) As with Ground 1, the state habeas court reasonably applied Supreme Court precedent, and this Court should likewise defer to the state habeas court's ruling in denying Ground 2.[3]

## C. Ground 3

---

[3] In addition to attacking counsel's plea performance, Lawton, in his "supporting facts" section, also raises sentencing error claims that he also raised before the state habeas court. Specifically, counsel "should have informed the court that the state's recommendation of 30 years serve 10 years was greater than the plea offer, and that the state should uphold the 3 years to serve." (Doc. 11 at 2.) The state habeas court did not directly note the distinction between the two trial phases (plea versus sentencing), but it noted that as to Lawton's sentencing claims, he failed to show *Strickland*-level deficient performance. Under the circumstances, Fitzgerald performed more than adequately by subpoenaing two witnesses to testify on Lawton's behalf at sentencing, including an ATF agent familiar with Lawton's assistance to that agency and Lawton's employer, who testified as to his strong work performance. (Doc. 10-4 at 5.) That was sufficient under the circumstances. Moreover, it found that Lawton failed to show *Strickland*-level prejudice as to his claim. This Court should defer to the state habeas court's determination on those matters. Even if deference is not appropriate, the sentencing claim is baseless in any event. Fitzgerald did inform the trial court that the government offered a "thirty, do three" plea agreement. (Doc. 10-3 at 32.)

Lawton alleges that the trial court and defense counsel failed to inform him that he had a right to withdraw his open-ended guilty plea or to appeal the plea. (Doc. 1 at 6.) Had he known about his right to withdraw, he says that he would have done so because "the state recommended a greater sentence than the original final plea offer; and the judge accepted and imposed the greater recommendation from the state."[4] (Doc. 1 at 6; doc. 11 at 3.) The state habeas court explained that Lawton had no federal or state constitutional right to withdraw his plea or to appeal his conviction, which had been "obtained via a guilty plea."[5]

---

[4] While Lawton seemingly suggests that he entered into a plea agreement, as noted above, Lawton actually entered an open-ended plea. (Doc. 10-3 at 3 (Change of Plea Tr.) (Judge: "In order for me to consider your open-ended guilty plea, I have to ask you some questions to make sure it's voluntary.").) The trial judge advised him on the record that he was entering

> an open-ended plea. There's no agreement between your attorney and the district attorney, and I could sentence you to the minimum, I could suspend the sentence, or I could stack everything, give you everything. You understand that?

(*Id.* at 4.) Lawton replied "Yes." (*Id.*)

[5] At most, he had a statutory right to withdraw. *See* O.C.G.A. § 17-7-93(b) ("At any time before judgment is pronounced, the accused person may withdraw the plea of 'guilty' and plead 'not guilty'; and the former plea shall not be admissible as evidence against him at trial."). The corresponding federal rule is less permissive. Under Fed. R. Crim. P. 11(c)(5)(B), a defendant only has an *absolute* right to withdraw his plea when the court rejects a plea agreement. Otherwise, the defendant may only withdraw his plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

(Doc. 10-4 at 8.)  From there, however, the state habeas court rather conclusorily denied Lawton's claim without further analysis, simply stating that he did not state a claim for habeas relief.  (Doc. 10-4 at 8.)

In part, the state habeas court's determination is well supported. First, Lawton had no constitutional right to withdraw his plea, so the trial court had no obligation to advise him of that right prior to the entry of his plea.  His right to withdraw his plea was statutory, and it is well established that such statutory rights are collateral, non-constitutional rights that need not be discussed by a trial judge prior to accepting a plea.  *See McCarthy v. United States*, 320 F.3d 1230, 1234 (11th Cir. 2003) (there is no constitutional requirement that a defendant be advised of the collateral consequences of his plea prior to its entry); *Lowe v. Sec'y of Dep't of Corr.*, 2009 WL 2496512 at *7 (M.D. Fla. Aug. 13, 2009) (same).  Moreover, neither the state habeas court nor the undersigned are familiar with any United States Supreme Court authority indicating that a trial judge has any affirmative obligation to inform the defendant of such a right *after* the entry of an open-ended plea but *prior* to sentencing.[6]  (Doc. 10-4 at 8.)  In the post-plea, pre-sentencing situation,

---

[6] The distinction as to the type of plea is critical.  Appellate courts have

16

there was no "clearly established" federal law to guide the state habeas court, so its determination that Lawton failed to state a habeas claim as to that issue is not reviewable here. *Van Patten*, 552 U.S. at 123-25; *see Threatt v. State*, 211 Ga. App. 630, 631 (1994) (trial court did not err by failing to inform defendant prior to sentencing on an open ended plea that she had the absolute right to withdraw her plea), *overruled on other grounds by Atlanta Independent Sch. Sys. v. Lane*, 266 Ga. 657, 658 (1996).

Next, as the state habeas court elucidated, defendants in Georgia do not enjoy an unqualified right to file a direct appeal from a judgment of conviction entered upon a guilty plea.[7] Instead, a defendant may only attack a judgment of conviction entered on a guilty plea where the specific issue he raises can be resolved by facts already in the record. *See*

---

regularly required trial courts to advise a defendant of his right to withdraw where the trial court departs from a negotiated plea, but there is no authority requiring such a warning where the defendant entered an open-ended plea, which by its very nature can fall anywhere within the statutory sentencing range. Nor has Lawton provided any such authority in his briefs. (Doc. 1 at 6; doc. 11 at 3.) Instead, he cites to inapposite cases -- where the trial judge rejected a plea agreement but did not inform the defendant of his right to withdraw the plea. *See Sanders v. State*, 169 Ga. App. 125, 125 (1983); *State v. Germany*, 246 Ga. 455, 455 (1980) (same).

[7] This is quite different from federal law. *See Rodriquez v. United States*, 395 U.S. 327, 329-30 (1969) (federal law has made an appeal from a federal district court's judgment of conviction a matter of right).

*Smith v. State*, 266 Ga. 687, 687 (1996); *see also Smith v. Robbins*, 528 U.S. 259, 270 n.5 (2000) ("The Constitution does not, however, require States to create appellate review in the first place."). Again, Lawton points to no authority requiring a trial court to advise a defendant of his right to appeal an open-ended plea. Indeed, since there is no unqualified right to appeal a conviction upon a guilty plea in Georgia, it would have been misleading for the trial judge to have advised him of such a right.

As to Lawton's trial-judge-related claims, the state habeas court's abbreviated determination was sound and merits deference. But that does not end the inquiry, because the state habeas court erred in one crucial respect: It did not apply proper Supreme Court precedent in reaching Lawton's Ground 3 attorney ineffectiveness claims. To be fair, Lawton did not explicitly allege in Ground 3 that he was denied the effective assistance of counsel. Still, the claim is so apparent from the face of his petition that it should not have gone without full consideration. Lawton, after all, insisted that defense counsel failed to inform him of his rights to withdraw and appeal his plea. (Doc. 10-1 at 4.) The state habeas court's summary dismissal missed the mark. While Lawton may have "had no recognized right under the federal or state

constitution either to withdraw his guilty plea or to appeal his conviction," he did enjoy a constitutional right to the effective assistance of counsel. (Doc. 10-4 at 8.) That right deserved some discussion.[8]

As with his Ground 2 claims, above, the Court is again guided by *Strickland* principles.[9] Lawton must first demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the plea process cannot be trusted.[10] *Id.*

---

[8] This is not a case where the state habeas court had to guess at the nature of Lawton's generalized Sixth Amendment claim -- the claim was "presented face-up and squarely" to the state habeas court, yet it failed to address it. *Kelley v. Sec'y for Dep't of Corrs.*, 377 F.3d 1317, 1345 (11th Cir. 2004) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

[9] Several states, including Georgia, have held that neither attorneys nor trial judges need advise defendants of the "collateral consequences" of their pleas. In *Padilla v. Kentucky*, ___ U.S. ___ 130 S. Ct. 1473, 1481 (2010) the Supreme Court cast some doubt in applying that rule to trial counsel. *Id.* at 1481 ("We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*, 466 U.S., at 689, 104 S. Ct. 2052."). Out of an abundance of caution, the Court will address Lawton's claims as if this collateral consequence in fact should figure into the ineffectiveness inquiry.

[10] Under the performance prong, the reasonableness of an attorney's

Here, Lawton enjoyed an absolute statutory right to withdraw his plea at any time prior to the judge's pronouncement of sentence. O.C.G.A. § 17-7-93(b). Thus, before the trial judge announced the sentence, but after the state requested a "30 do 10" sentence in place of its "30 do 3" plea offer, he could have withdrawn his plea and instead opted to take the case to trial. While Lawton enjoyed that absolute right, the Court is still satisfied that under the rather unique circumstances of this case, Fitzgerald did not perform deficiently by failing to stop the proceedings to bring that right to his attention.

Lawton placed Fitzgerald in quite a pickle. Fitzgerald's plea advice was accurate -- he did not misadvise Lawton as to sentencing range or

---

performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Strickland*, 466 U.S. at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

the consequences of his plea. Lawton, of his own accord, chose to throw himself on the mercy of the court by pursuing an open-ended plea rather than accepting his counsel's advice to take a more certain plea agreement, and he then knowingly and voluntarily entered that plea, having been advised by the sentencing judge and Fitzgerald that he faced the risk of a heightened sentence. Hence, by the time of the alleged attorney ineffectiveness, Lawton had already manifested a clear intent to waive many of his rights on a gamble that the sentencing judge would "go easy" on him based upon his cooperation with the ATF. And after the state made its "30 do 10" recommendation (doc. 10-3 at 7), the sentence was still uncertain. The judge may could have disregarded the state's recommendation and imposed a more lenient sentence. Faced with that scenario, Fitzgerald went ahead with Lawton's case in mitigation rather than affirmatively advising Lawton of his right to withdraw his plea. (*Id.* at 8-33.)

Now, Lawton wants to go back in time to take the state's more favorable final plea offer. Had he known he could withdraw his plea, he says he would have done so. Counsel is thus to blame for failing to save the day. The truth is, Lawton has himself to blame. Nothing in the

record shows that Fitzgerald knew Lawton was unaware of his right to withdraw his plea or that he would rather have faced the added uncertainty of a trial rather than receiving a "30 do 10" sentence. (Doc. 10-2 at 26 ("although we briefly discussed the possibility of going to trial, that's not something Mr. Lawton felt like he wanted to do").) And even if Lawton had exercised his right to withdraw the plea, there would have been no guarantee that he would have wound up with a better or even a different result. Indeed, the prosecutor would likely not have been kindly disposed toward Lawton after being burned twice -- once by Lawton's rejecting the plea offer and again by his withdrawal of the open ended plea. If he proceeded to trial and had been convicted,[11] he would have faced exactly the same sentencing range. Most importantly,

---

[11] A conviction was nearly certain, according to Fitzgerald:

Mr. Lawton was parked on the wrong side of the road in a high drug area. He was approached by the police officer. Before the police officer ever got to the truck, Mr. Lawton opened the door, some cocaine fell out of the truck. The officer saw it, went over there and picked it up, looked at it, saw that it was cocaine, and immediately arrested Mr. Lawton. Upon arrest, he found some more marijuana in the truck. . . . [A]lthough we briefly discussed the possibility of going to trial, that's not something Mr. Lawton felt like he wanted to do. And I didn't think it would be a smart avenue to take either with this case.

(Doc. 10-2 at 25-26.)

Lawton had already entered his plea, manifesting a clear intent to waive his rights on a risky gamble.

Under the totality of the circumstances the Court is simply not persuaded that a reasonable attorney in Fitzgerald's position would have done things differently.[12] Lawton is similarly hard pressed to show any actual prejudice from Fitzgerald's actions. While things *might* have gone differently had he withdrawn his plea, the Court is not persuaded that there was a "reasonable probability" that Lawton's ultimate sentencing outcome would have changed.

As for Fitzgerald's failure to advise Lawton of his right to appeal, Lawton again has shown no prejudice. Since there is no absolute right to appeal in Georgia, Lawton could only have appealed the voluntary and knowing nature of his plea, as that was the only issue that had been fully developed on the record.[13] However, his plea was knowing and

---

[12] Too, when Fitzgerald advised him after sentencing that he could move to withdraw his plea (although the right was no longer absolute, Lawton still could have moved to withdraw it), he chose instead to pursue a motion for reconsideration in order to present additional evidence in mitigation (in that sense, then, Lawton may be said to have waived his right to complain of the deal that he was ultimately dealt). (Doc. 10-2 at 85-86.) That motion was ultimately denied after a hearing. (*Id.* at 81.)

[13] Lawton's claim regarding counsel's failure to advise him of his right to withdraw the plea prior to sentencing was not sufficiently developed until the habeas

voluntary.  More importantly, he still had the right to challenge the plea during habeas proceedings, which he did.

Accordingly, the Court should defer in part to the state habeas court's summary disposition of this claim, but should deny Lawton's Ground 3 ineffectiveness claims on the merits.

### D.    Ground 4

In his final ground for relief, Lawton argues that his sentence is cruel and unusual punishment in that it is grossly out of proportion to the severity of his case, which involved what he describes as a small amount of contraband.  (Doc. 1 at 6.)  The state habeas court quickly disposed of this claim, explaining that it

> is without merit.  Under O.C.G.A. § 16-13-30(e), Petitioner could have been sentenced from anywhere between five and thirty years, as Petitioner had previously been convicted for three other drug offenses. . . . [Hence,] Ground . . . 4 [is] denied.

(Doc. 10-4 at 8.)

While the analysis is abbreviated, it is correct.  Lawton does not dispute that he is a recidivist who has committed multiple felonies over the course of his life.  Indeed, at sentencing, the state introduced five

---

proceedings.  Hence, he had no "right" to appeal that matter, and Fitzgerald did not perform deficiently by failing to advise him of that non-existent right.

exhibits showing felony convictions spanning a period of some 26 years. (Doc. 10-3 at 6-7.) The Supreme Court has emphatically held that recidivist penalties do not amount to cruel and unusual punishment simply because the "triggering" offense was minor in character. *See Ewing v. California*, 538 U.S. 11, 29 (2003). Instead, recidivism statutes reflect "a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated," and the states that do so are entitled to place the "onus" upon such a defendant who simply cannot conform his conduct within the social norms prescribed by a state's criminal laws. *Id.* at 30 (quoting *Rummel v. Estell*, 445 U.S. 263, 284 (1980) and citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J. concurring)). Accordingly, the Court should defer to the state habeas court's ruling in denying Ground 4.

## IV. CONCLUSION

Lawton has not shown that the state habeas court's decision is contrary to or an unreasonable application of clearly established federal law, or that its decision involved an unreasonable determination of the facts. Accordingly, this Court should defer to the state habeas court's

adjudication of Lawton's four claims, and his 28 U.S.C. § 2254 petition should be **DENIED**. Moreover, applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).[14]

**SO REPORTED AND RECOMMENDED** this  22nd  day of June, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

[14] Lawton also moves to appoint counsel. (Doc. 12.) The Rules Governing § 2254 Cases provide that appointment of counsel is proper if an evidentiary hearing is needed, if certain discovery is required, or "if the interest of justice so requires," provided that petitioner qualifies under 18 U.S.C. § 3006A(g). Rules 6(a), 8(c). Since neither an evidentiary hearing nor discovery are required here, and since Lawton has demonstrated his ability to file appropriate pleadings seeking § 2254 relief, his motion to appoint counsel is **DENIED**.